## 10575.  ADAMS v. WALKER.

Where a promissory note given for the purchase-price of a mule and reserving to the seller the title to the property until payment of the note contains a stipulation that the seller "makes no warranty, either express or implied, as to the soundness, health, or habits of said property, but the maker hereof assumes all risk in reference thereto, and shall not be entitled to an abatement of the amount of this note for any reason whatsoever," it is no defense to a suit on the note that the mule died without fault of the purchaser, while in his possession.

DECIDED JANUARY 6, 1920.

Complaint; from city court of Tifton—Judge Price.  May 8, 1919.

*Fulwood & Hargett,* for plaintiff.  *R. D. Smith,* for defendant.

LUKE, J.  Adams brought suit upon a promissory note given for the purchase-price of a mule, title to which was retained in Adams until payment of the note.  Walker pleaded that he was sued on a retention-of-title note; that after the execution of said note and before it became due, and while the title to the mule for which the note was given was in the plaintiff, the mule died, without fault of the defendant, and that under the law the loss occasioned by the death of the mule fell upon the seller.  Upon hearing the evidence the court directed a verdict for the defendant; to which the plaintiff excepted.

This brings up squarely for decision the question as to whether it was "otherwise agreed" in the contract, and involves a construction of that contract.  The cardinal rule of construction is to ascertain the intention of the parties.  Civil Code of 1910, § 4266.  The whole contract should be looked to in arriving at the construction of any part; and words generally bear their usual and common signification.  Id. § 4268.  Section 4123 states the law invoked in this case, and is as follows: "Where property is sold and delivered, but title is not to pass until payment in full of the purchase-money, and the property is lost, damaged, or destroyed without the vendee's fault, he is entitled to a rescission of the contract or to an abatement in the price, unless it is otherwise agreed in the contract of sale."  That portion of the contract material in this case, and which will, for convenience, be hereinafter referred to as "the contract," is as follows: "It is fully understood and agreed between the parties hereto that said S. N. Adams makes

no warranty, either express or implied, as to the soundness, health, or habits of said property, but the maker hereof assumes all risk in reference thereto, and shall not be entitled to an abatement of the amount of this note for any reason whatsoever." The first portion of the contract, stating "it is fully understood and agreed between the parties hereto that said S. N. Adams makes no warranty, either express or implied, as to the soundness, health or habits of said property," undoubtedly is the mere negation of a warranty, referring, since nothing to the contrary appears, to the condition of the mule at the time of the sale. *Whigham* v. *Hall*, 8 *Ga. App.* 509 (1) (70 S. E. 23) ; 30 Am. & Eng. Enc. Law, 174. The next part of the contract, separated from the foregoing clause only by a comma, is, "but the maker hereof assumes all risk in reference thereto." It is hardly reasonable to suppose that it was the intention of the parties that the word "thereto" in the foregoing clause should refer merely to the word "property," and that the meaning is that the buyer assumed all risk in regard to the "property" and would be responsible for its loss, damage, or destruction without the buyer's fault while in his possession. The outstanding thought in the first clause is the negation of warranty as to the soundness, health, and habits of the mule, and it seems more reasonable to believe that the next clause is merely an amplification of the first, whereby the matter of warranty is more fully set out, the parties saying, in effect, "The seller does not warrant the soundness, health, or habits of the mule, and the buyer assumes the risk as to those things." The next clause is, "and shall not be entitled to an abatement of the amount of this note for any reason whatsoever." Considering this clause in connection with the context, why was it inserted? What meaning was it intended to convey? Does it relate to the subject of warranty, the condition of the mule at the time of the sale, or is it intended to bring the parties within the exception of the statute, and to cause the loss of the mule to fall upon the vendee instead of the seller? The subject of warranties is not entirely covered by the preceding part of the contract, and, as the outstanding thought of that part of the contract is the subject of warranty, it might be reasoned with considerable plausibility that the parties, after stating that the seller would not warrant the mules in certain particulars, should then negative all other warranties by stating in substance that the

seller refused to make any warranties whatsoever as to the mule's condition at the time of the sale. Let us then examine carefully the first part of the contract.

When Adams stated that he made "no warranty, either express or implied," he might have gone no further and been absolutely protected as to the condition of the mule at the time of the sale. However, he does go further, and particularly designates exactly those things he refuses to warrant, omitting other warranties from which he would have been released by his prior refusal to make any warranty whatsoever. Assuming, for the sake of the argument, that the parties did not know the legal effect of the clause, "makes no warranty, either express or implied," is it not more reasonable to suppose that the subject of warranty would have been exhausted in the clause detailing the exact warranties which were refused, than that the parties should have attempted to set out the things not warranted, that they failed to set out all those intended, and that the clause under consideration, "and shall not be entitled to an abatement of the amount of the note for any reason whatsoever," was inserted to exclude all other warranties not specified in the "itemized statement" of warranties? In short, we think an analysis of the entire contract shows that the parties covered the subject of warranty as fully as they intended when they categorically set out those things that were not to be warranted, and that this last clause of the contract, employed as it is in a retention-of-title note, using words identical in meaning with those words employed in the latter part of code-section 4123 (that section employing the words "abatement in the price," and the contract the words, "an abatement in the amount of this note"), was intended to make the loss of the animal fall upon the buyer rather than upon the title-holder, where the loss would ordinarily fall.

The adjudicated cases give but little assistance in ascertaining the meaning of the contract under consideration. The decision in the case of *Avery* v. *Middlebrooks,* 142 *Ga.* 830 (83 S. E. 944), construes a retention-of-title contract wherein the buyers "guaranteed the sellers against any damage to the machinery by fire while in their possession, and that they would keep the machinery insured for at least one half of the purchase-money for the benefit of the seller," the court holding that "this constituted such a contract within the meaning of the Civil Code (1910), §

4123, as made the loss fall on the buyers, if the machinery was destroyed by fire." It was self-evident in that case that the parties had no reference to the condition of the machinery at the time of sale, and that they intended to cover the contingency of a loss after the sale and while the property was in possession of the vendees, and that the loss covered was a loss by fire. In the case of *McKinney* v. *Battle,* 13 *Ga. App.* 255 (79 S. E. 92), the retention-of-title note, after reciting that the mare "is bought after a full inspection, and without warranty, either express or implied," states that "it is expressly understood that Battle Brothers do not insure the health, life, soundness, or work of said mare, . . but in case of loss or damage to said property, same shall be the loss of the buyers." It was not even questioned there that the parties intended that the loss should fall on the seller, but the sole question discussed was whether the words "loss or damage" covered the loss of the mare by "death." The court appeared to think it necessary to infer that the word "loss" related back to the word "life" in the previous clause, and held that "loss of life is nothing more nor less than death," and that consequently the loss by death fell upon the buyers. It may be noted that the subject of warranty had been completely covered, and that when it was stated that the sellers "did not insure" the health, life, or soundness, or work of said mare, the parties undoubtedly had reference to the loss of the mule by some cause arising after the sale. We are of the opinion that the words "loss or damage" were broad enough to cover loss or damage of the mule from any cause, including death, and that it was really not necessary to construe the word "loss" as referring to any particular word previously used. In other words, the cardinal rule of construction of contracts being the ascertainment of the intention of the parties at the time of contracting, we think that in a retention-of-title contract such as the one we are considering, the contracting parties may, if they so desire, particularize the loss the buyer is to suffer, as was done in 142 *Ga.,* supra, or they may, without specifying any particular liability assumed by the buyer, use such general and comprehensive expressions as will cause all loss to fall upon the seller. It appears to the court that the expression, "and [the maker] shall not be entitled to an abatement of the amount of this note for any reason whatsoever," was intended to cover, and did

cover, the loss of the mule by death before the purchase-money was paid and while it was in possession of the buyer. It follows that the court's refusal to sustain the demurrer to the plea in this case was error. Everything occurring thereafter was nugatory, and it was error to direct a verdict for the defendant.

*Judgment reversed.   Broyles, C. J., and Bloodworth, J., concur.*